IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| THONGLIANE EDWARDS, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> TYSON FOODS, INC., *dba* Tyson Fresh Meats, Inc., <br><br> Defendant. | No. 4:08-cv-0113-JAJ <br><br><br> **ORDER** |

This matter comes before the court pursuant to plaintiffs' April 6, 2009 motion for conditional certification of a collective action pursuant to the Fair Labor Standards Act [dkt. 49]. Defendant resisted plaintiffs' motion on May 8, 2009 [dkt. 54], to which plaintiff replied on June 1, 2009 [dkt. 64].

## Procedural History

Plaintiffs filed their complaint in this matter on March 20, 2008, wherein they alleged that the defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the Iowa Wage Payment Collection Act, Iowa Code Chapter 91A by failing to pay all wages due under these laws. On August 8, 2008, this mater was stayed pending a decision by the United States Judicial Panel on Multidistrict Litigation on defendant's motion for coordinated or consolidated pretrial proceedings. On October 9, 2009 the United States Judicial Panel on Multidistrict Litigation denied defendant's motion to transfer. To date, over one thousand one hundred and fifty (1,150) consents to join this lawsuit pursuant to the FLSA have been filed.

## Conditional Certification under the FLSA

The FLSA provides, in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

This court previously set forth the applicable standard in determining whether plaintiffs were "similarly situated" for purposes of § 216(b) in Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 576-77 (N.D. Iowa 2005).

> Both 29 U.S.C. § 216(b) and its precedent are "largely silent as to how the class certification issue should be analyzed." Id. (citing Hoffmann-La Roche Inc., 493 U.S. at 170). "A two-tiered analysis distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely completed." Campbell v. Amana Company, L.P., 2001 WL 34152094 *2 (N.D. Iowa 2001) (citing Thiessen v. General Electric Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998)). Because the initial stage of conditional certification is "based on little or no discovery, the 'burden on plaintiffs is not a stringent one.'" Id. (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Accordingly, "conditional certification of a representative class is generally granted." Id. (citing Theissen, 996 F. Supp. at 1080). To establish that conditional certification is appropriate, the plaintiffs "need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" Id. (quoting Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)). "Courts have held that

> plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." Id. (citing Hoffmann, 982 F. Supp. At 261; accord Jackson, 163 F.R.D. at 432). "The more stringent factual inquiry as to whether the plaintiffs are 'similarly situated' is made only after a more substantial record has been amassed." Id.

Dietrich, 230 F.R.D. at 576-77. District courts in the Eighth Circuit addressing this issue more recently have also employed the two-step approach to determine collective active certification under § 216(b). See Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp.2d 870 (N.D. Iowa 2008); Salazar v. Agriprocessors, Inc., 2008 WL 782803 (N.D. Iowa 2008); Lopez v. Tyson Foods, Inc., 2008 WL 3485289 (D. Neb. 2008); Parker v. Rowland Express, Inc., 492 F. Supp.2d 1159 (D. Minn. 2007); Parler v. KFC Corp., 529 F. Supp.2d 1009 (D. Minn. 2008); Resendiz-Ramirez v. P & H Forestry, L.L.C., 515 F. Supp.2d 937 (W.D. Ark. 2007).

To establish that conditional certification is appropriate, the plaintiff must provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." Dietrich, 230 F.R.D. at 577 (quoting Jackson v. New York Tel. Co., 163 F.R.D. at 432). Judge Bennett, United States District Judge for the Northern District of Iowa, described plaintiffs' burden in this respect as follows:

> Although the burden at the first step is "more lenient," and does not require existing plaintiffs to "show that members of the conditionally certified class are actually similarly situated," Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 1007), "plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required," Young v. Cerner Corp., 503 F. Supp.2d 1226, 1229 (W.D. Mo. 1007). The supporting evidence should include "evidence that other similarly situated individuals desire to opt in to the litigation" because "'[o]thers' interest in

3

> joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants.'" Parker v. Rowland Express, Inc., 492 F. Supp.2d 1159, 1164-65 (D. Minn. 2007) (quoting Simmons v. T-Movile USA, Inc., No. H-06-1820, 2007 WL 21008 at *9 (S.D. Tex. Jan. 24, 2007). In addition to "whether potential plaintiffs have been identified," district courts outside of the Eighth Circuit have evaluated several other factors at this stage to determine the propriety of conditional certification, including "whether affidavits of potential plaintiffs have been submitted, whether there is evidence of a widespread discriminatory plan, and whether, as a matter of sound management, a manageable class action exists." Jiminez v. Lakeside Pic-N-Pac, L.L.C., 2007 WL 4454295 at *2 (W.D. Mich. Dec. 14, 2007) (citing Olivo v. GMAC Mortg. Corp., 374 F. Supp.2d 545, 548 (E.D. Mich. 1004)). In sum, "[c]onditional certification in the first step 'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Young, 503 F. Supp.2d at 1229 (quoting Davis v. NovaStar Mortg., Inc., 408 F. Supp.2d 811, 815 (W.D. Mo. 2005)).

Bouaphakeo, 564 F. Supp.2d at 892.

While not expressly arguing that this issue has proceeded to the "second step," Defendant does argue that an intermediate approach may be more appropriate since substantial discovery has taken place in this matter. This court declines to adopt this standard, which has been used in some district courts in other circuits. Defendant does not allege that discovery in this matter is "largely completed." Thus, the court will analyze this issue at the "first step" or "notice stage" of the two-step inquiry. Defendant further notes that plaintiffs' burden at the first step, while lenient, does exist and must be satisfied. The court agrees.

4

Plaintiffs propose a FLSA class consisting of all present and former hourly production employees of Defendant Tyson's Perry and Waterloo, Iowa meat processing facilities who have worked for Defendant Tyson at any time since March 21, 2005[1] who: (1) don, doff, wash or sanitize <u>any</u> sanitary and protective clothing, equipment and gear; and/or (2) maintain knives, steels and any other tools or equipment that are used in the production process.

In support of their motion, plaintiffs rely on the following allegations from their complaint:

> 5. At all times relevant to this Complaint, upon information and belief, Defendant Tyson has only paid certain "mesh wearing" employees at its Perry, Iowa and Waterloo, Iowa meat processing facilities four (4) minutes per day for "pre and post-shift" time, despite the fact that Plaintiffs spend as much as 30-35 minutes or more per day performing uncompensated work activities as described in this Complaint.

23. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to Plaintiffs and the Class are:

> a. Whether the work performed by Plaintiffs and the Class is included in the type of work Defendant Tyson employed Plaintiffs and the Class to perform;
>
> b. Whether the work performed by Plaintiffs and the Class is compensable under federal law and/or Iowa state law;
>
> c. Whether Defendant Tyson has engaged in a pattern and/or practice in Iowa of forcing coercing deceiving and/or permitting Plaintiffs and the Class to perform work for

---

[1] According to plaintiffs' brief, this date represents a three-year time period, the maximum statute of limitations for the Fair Labor Standards Act, backward from the filing of the Complaint, which was March 20, 2008.

Defendant Tyson's benefit which was not properly compensated;

d. Whether Defendant Tyson has failed to permit full meal and rest periods as required by Iowa law, other applicable regulations, and/or Defendant Tyson's stated policies;

e. Whether Defendant Tyson has failed to properly compensate Plaintiffs and the Class in connection with interruptions to their meal or rest periods;

f. Whether Defendant Tyson has failed to keep true and accurate time records for all hours worked by its employees as required by Tyson's policies and federal and state law;

g. Whether Defendant Tyson failed to pay Plaintiffs and the Class for all of the work Tyson required them to perform;

h. Whether Defendant Tyson violated the Iowa Wage Payment Collection Law, Iowa Code 91A.1 et seq. through its practices of not paying employees for all time worked;

I. Whether Defendant Tyson failed to pay employees for time spent walking between work stations after the first compensable work activity and before the last compensable work activity in violation of both the federal Fair Labor Standards Act and the Iowa Wage Payment Collection Law; and

j. The nature and extent of class-wide injury and the measure of damages for the injury.

24. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the

management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable from the Defendant Tyson's own employment records.

25. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant Tyson.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Furthermore, the amounts at stake for many of the Class members, while substantial, are not great enough to enable them to maintain separate suits against Tyson.

27. Without a class action, Defendant Tyson will likely retain the benefit of their wrongdoing and will continue an illegal course of action, which will result in further damages to Plaintiffs and the Class. Plaintiffs envision no difficulty in the management of this action as a class action.

28. Defendant Tyson owns and operates meat processing facilities in Perry, Iowa and Waterloo, Iowa. The complained of unlawful compensation system at issue in this Complaint has affected Defendant Tyson's present and former production and support employees uniformly at these locations. At all times relevant to this Complaint, Defendant Tyson has utilized the same compensation system complained about herein.

29. Under Defendant Tyson's wage compensation system, Plaintiffs and Class members who are production employees are paid only during the time that they are present on the actual production assembly line under a system known as "gang time" or "line time." Defendant Tyson, with the exception of the payment to some employees of four minutes

per day for "pre and post-shift activities," as a matter of policy and practice, does not pay its employees for all required pre-production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing sanitary and protective equipment, cleaning and sanitizing that equipment, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities. Defendant Tyson also requires its employees to be present at the production line for periods after their "gang time" (i.e. the time when they stop getting paid) but they are not paid for that time.

30. Pursuant to federal regulations and Defendant Tyson's own internal policies and procedures, Plaintiffs and Class members are required to wear special personal protective equipment ("PPE") for protection and sanitary reasons. PPE includes, *inter alia*, plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other protective equipment and coverings. Most of Defendant Tyson's employees use knives and other sharp instruments in the course of their work and the PPE is designed to protect them from injury. The PPE and other required gear are also designed to protect Tyson's meat products from contamination by food borne diseases.

31. As a consequence of the compensation system utilized by Defendant Tyson, Plaintiffs and Class members are not fully paid at the beginning of each shift for the time it takes to don their PPE, obtain other necessary tools and gear, maintain those tools and gear, walk from the supply rooms to their lockers and/or from their lockers to sanitation stations and then to production areas, and sanitize the required PPE, walk to

production areas and prepare to begin performing line activities.

32. At the beginning of each work day, Plaintiffs and Class members are required to report to their lockers to don their PPE. Production employees must also obtain other tools and PPE, walk to storage areas and obtain knives and other gear, work their steels and/or mousetraps, walk to the sanitation stations and sanitize their gear, walk to the production lines and don the PPE before paid time begins. Other than allegedly being paid a total of four (4) minutes per day of "pre and post-shift activity" time, Plaintiffs are not paid for these work activities.

33. Pursuant to Defendant Tyson's compensation system, employees are not fully compensated for time spent before or after paid time working steels or mousetraps, which is a necessary task for the performance of their job.

34. During their unpaid lunch and other unpaid breaks, Plaintiffs and Class members have to remove their PPE, clean their PPE, and then re-don it at the end of breaks. These employees are not paid anything or are not fully paid for performing these work activities.

35. After the end of paid time, employees must finish their work on production and other activities, walk to wash stations, wait in line to wash the PPE, knives and other gear, wash their PPE, knives and gear, walk to their lockers, doff their uniforms and PPE and stow the uniforms, PPE, knives and other gear in their lockers.

36. According to Defendant Tyson's compensation system, Plaintiffs and Class Members are not paid during the time after "gang time" (when compensation stops) although they continue to work on final production tasks and then walk to and wait at wash areas, doff PPE, wash PPE and gear, walk to lockers, doff additional PPE and stow gear, tools and PPE.

9

Plaintiffs also submit deposition excerpts from several potential plaintiffs. Mary Iverson testified that she is paid by gang time and that the time added to her hours worked to account for pre and post-shift activities does not accurately reflect how long those activities actually take. Kevin Matthew testified that he is paid on gang time, but as a shipout employee he never needs to come in early to set up. Arthur Quick testified that he is paid from the time "your first head comes to you until - - your time ends when the last head passes you." Quick further testified that everyone in his department wears similar equipment. Martin Torres testified that he that while the four additional minutes do cover his post-shift activities, it is not enough to cover what he does prior to the start of his shift. Also in support, plaintiffs filed an affidavit of Jody Wells, who is the Secretary-Treasurer of the United Food and Commercial Workers (UFCW) Local Union 1149 in Perry, Iowa, which represents the hourly workers at the Tyson Fresh Meats plant in Perry, Iowa. According to Wells' affidavit, it is her understanding that all or most of the hourly workers in the Kill, Cut and Converting departments are paid on a "gang time" basis where they are only paid for the time they work on the production line. An affidavit of Scott Noyd, who is a Business Agent for the UFCW Local Union 431 in Davenport, Iowa, which represents the hourly workers at the Tyson Fresh Meats plant in Waterloo, Iowa demonstrates that Noyd has the same understanding as Wells.

Defendant argues that plaintiffs cannot show that they are "similarly situated" for purposes of authorizing collective action treatment and notice under § 216(b). Defendants argue that the unsupported and contested allegations of Plaintiffs' complaint do not constitute substantial allegations that the putative class members were together the victims of a single decision, policy or plan. Defendants claim that the proposed class members are not similarly situated because there exist major differences in the way in which gang time, which is not illegal per se, is administered throughout both facilities, especially taking into account the discretion individual supervisors have to pay employees for additional time

spent on pre and post-shift activities. Further, not all employees in Plaintiffs' proposed class are paid on gang time, i.e., employees in Defendant's Rendering, Load Out, and Maintenance departments are not paid on gang time. Likewise, defendant claims that individual damage awards and defenses make plaintiffs' proposed class unmanageable. Finally, defendant contends that there is a vast array of clothing and PPE by the various employees, as well as sanitizing requirements. These factual differences, defendant contends, cannot be decided on a collective basis.

Plaintiffs counter that the court should, at a minimum, authorize collective action treatment under § 216(b) to all employees who are paid on gang time and have not been pain in full for all time spent donning, doffing and cleaning their PPE, gear, and tools, and for the walking time associated with these tasks. Plaintiffs further note that they are not seeking a court-approved notice as most putative plaintiffs are aware of the lawsuit and such notice would not likely result in significantly more opt-ins. Rather, plaintiffs request that the court set a deadline that any additional opt-ins be filed no later than 90 days from the date of this order.

A review of the materials submitted by both parties reveals that there are, in fact, hourly employees at both the Perry and Waterloo facilities that are paid by "gang time." The court finds that the plaintiffs have met their burden, at least at this stage of the litigation, of demonstrating a "single decision, policy or plan," in that most production employees are paid on a "gang time" basis, wear some kind of PPE, and use knives in their work. This is a sufficient factual basis that similarly situated plaintiffs exist, assuming that the collective action is limited to those production employees paid on the "gang time" system, which is the company-wide policy at the crux of plaintiffs' FLSA claim. The differences outlined by defendants do not change this result. Considering that the putative class is limited to those employees paid via gang time, the similarities outweigh the differences. Likewise, the fact that there are two facilities involved, which

are located approximately two-and-a-half hours apart, does not change the court's result at this stage.

Upon the foregoing,

**IT IS ORDERED** that plaintiffs' motion for conditional certification of the following collective action is granted:

> All current and former employees of Tyson's Waterloo or Perry, Iowa processing facilities who have been employed at any time from March 21, 2005 to the present, and who are or were paid under a "gang time" compensation system.

All opt-in forms shall be filed no later than 90 days from the date of this order.

**DATED** this 6th day of November, 2009.

_____
JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA