IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| THONGALINE EDWARDS, *et al.*, | |
| Plaintiffs, | No. 4:08-cv-00113-JAJ |
| vs. | |
| TYSON FOODS, INC., | **ORDER** |
| Defendant. | |

This matter comes before the court pursuant to defendant's December 14, 2009 motion for partial summary judgment [dkt. 98]. Plaintiffs resisted defendant's motion for partial summary judgment on January 19, 2010 [dkt. 100]. Defendant filed its reply brief on January 29, 2010 [dkt. 102].

Defendant moves for summary judgment on Count II of Plaintiffs' Complaint, which asserts a claim under the Iowa Wage Payment Collection Act ("state wage claim"), Iowa Code §91A et seq. Defendant argues that Plaintiffs' state wage claim is preempted by §301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185, because the resolution of Plaintiffs' state wage claim depends upon the interpretation and construction of various provisions of applicable collective bargaining agreements ("CBAs") that govern the terms of Plaintiffs' employment with Tyson.

Plaintiffs resist defendant's motion as premature and request a continuance pursuant to Fed. R. Civ. P. 56(f) so that it may conduct discovery on this matter. Alternatively, Plaintiffs claim that defendant's summary judgment should be denied because their state wage claim does not require interpretation of a CBA, is not based upon any CBA, and Plaintiffs' individual rights under Iowa Code Chapter 91A cannot be waived by the action of a labor union, an employer, or a CBA.

As set forth below, defendant's motion for partial summary judgment is denied.

## SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

## STATEMENT OF MATERIAL FACTS

Plaintiffs allege in Count II of their Complaint a claim under the Iowa Wage Payment Collection Act, Iowa Code Chapter 91A. Plaintiffs' Complaint asserts claims on behalf of themselves and a putative class of individuals identified as "current and former production and support employees of Defendant Tyson's meat processing facilities in Perry, Iowa and Waterloo, Iowa . . . ." Plaintiffs' Complaint was filed on March 30, 2008. Because the applicable limitations period on the state wage claim is two years, the earliest state wage claims in this case go back to March 30, 2006. During this period of time, Plaintiffs and other production and support workers at Defendant's Perry and Waterloo facilities have been represented by the United Food & Commercial Workers International Union ("UFCW"), and certain terms of their employment have been specifically governed by very similar CBAs entered into between Defendant and the UFCW.

On May 19, 2003, following extensive collective bargaining negotiations, the UFCW entered into a CBA with defendant setting forth various terms and conditions of employment for represented employees of Defendant at its Perry facility. The CBA was effective until December 16, 2007. Following further collective bargaining and negotiations between Defendant and the UFCW, on December 17, 2007, a revised and amended version of the May 19, 2003 CBA was adopted by both Defendant and the UFCW. This CBA, which currently remains in force, is effective until June 24, 2012.

On July 29, 2002, following extensive collective bargaining negotiations, the UFCW entered into a CBA with IBP, a subsidiary of Defendant, setting forth various terms and conditions of employment for represented employees of IBP's Waterloo facility. On or about May 1, 2003, IBP was renamed Tyson Fresh Meats, Inc. Following further collective bargaining negotiations between Defendant and the UFCW, on January 1, 2007, a revised and amended version of the July 2002 CBA was adopted by both Defendant and the UFCW. This CBA, which currently remains in force, is effective until December 31, 2011.

The CBAs at issue contain an extensive Article 20, entitled "Hours of Work," which details myriad terms and conditions relevant to the working hours and work schedules of employees at the Perry and Waterloo facilities. These terms include a definition of "work time" and how such time is calculated, when employees will be paid overtime and how such overtime is calculated (including alternative provisions applicable to employees who work particular shifts or particular days), detailed provisions governing how employees who are called to work outside their regular work shift will be paid (including alternative provisions for employees called back to duty after the conclusion of their shift but before leaving the facility), and multiple shift differentials for work during specified hours or on weekends.

The CBAs also include an Article 28, entitled "Wage Rates," which sets forth a detailed matrix, based on factors such as the employee's division, the employee's job position, the shift worked, and the date of calculation, for the determination of the wage rate applicable to each employee's employment.  In addition, the Perry CBA includes in appendix which further specifies wage rates based on job positions in the various departments of the facility.

## CONCLUSIONS OF LAW

Section 301 of the Labor Management Relations Act ("LMRA") states: "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . ." 29 U.S.C. § 185(a).

Section 301 of the LMRA "expresses a congressional policy that federal labor law should govern § 301 disputes." Vacca v. Viacom Broadcasting of Missouri, Inc., 875 F.2d 1337, 1341 (8th Cir. 1989).  "It is a mandate to the federal courts to establish a federal common law to govern disputes arising out of labor contracts." Id. (citations omitted).  Thus, if an action alleges a violation of a term of a labor contract, "federal labor law preempts any local law purporting to define the meaning or delineate the scope of a labor contract provision." Id. at 1342.  "This assures uniformity of interpretation of collective bargaining agreements and promotes harmonious and consistent resolution of labor contract disputes." Id. (citations omitted).  The preemptive effect of § 301 is not limited to actions alleging violations of labor contracts, however.  Section 301 preempts all actions "where resolution fo the action requires interpretation of a collective bargaining agreement." Id.  As explained by the United States Court of Appeals for Eighth Circuit in Vacca, however, the preemptive effect of § 301 is not all encompassing.

> This does not mean that all actions commenced by an employer by an employee covered under a labor contract must be brought under § 301. Such an employee may assert a state law claim against his employer if resolution of that claim does not require interpretation fo the terms of the union contract. If resolution of the claim, however, is "substantially dependent" on the terms of the union contract, or if evaluation fo the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," it is preempted by § 301. The complete factual background of the case must be examined against all elements of the state law claim, including defenses, to determine whether the terms of the union contract "come into play."

Id. at 1342 (internal citations omitted). As explained by the Supreme Court in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-213 (1985):

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
>
> Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can

> be waived or altered by agreement of private parties, are preempted by those agreements.

The focus must be, therefore, whether the state law cause of action, as applied in the current case:

> [C]onfers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contractual relationship, that law is preempted.

Id. at 213.

A two-step analysis has been endorsed by the United States Court of Appeals in determining whether plaintiffs' IWPCA claim is preempted by section 301.

> In applying the section 301 preemption doctrine, we begin with "the claim itself," *see Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006), and apply a two-step approach in order to determine if the claim is sufficiently "independent" to survive section 301 preemption, *see Bogan*, 500 F.3d at 832. First, a "state-law claim is preempted if it is 'based on' [a] . . . provision of the CBA[,]" meaning that "[t]he CBA provision at issue" actually sets forth the right upon which the claim is based. *Id*. Second, section 301 preemption applies where a state-law claim "is 'dependent upon an analysis' of the relevant CBA," meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA. *Id*.

Williams v. National Football League, 582 F.3d 863, 874 (8th Cir. 2009). "[T]he crucial inquiry is whether 'resolution of a state-law claim depends upon the meaning of a [CBA].'" Miner v. Local 373, 513 F.3d 854, 865 (8th Cir. 2008) (quoting Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. at 399, 405-06 (1988)).

With respect to the first step of the two-step analysis, Plaintiffs' claim under the IWPCA seeks the recovery of unpaid wages under the IWPCA. The IWPCA is designed to facilitate the collection of wages owed to employees. Jeanes v. Allied Life Ins. Co., 300 F.3d 938 (8th Cir. 2002). See also Kartheiser v. American Nat. Can Co., 271 F.3d 1135, 1136 (8th Cir. 2001) ("The purpose of the statute is uncomplicated and direct: 'to facilitate collection of wages by employees.'") (quoting Educational Tech., Ltd. v. Meinhard, 2001 WL 488088 *8 (Iowa Ct. App. 2001). Plaintiffs' claim is not premised on a right provided by the CBA. To the contrary, plaintiffs claim is that defendant's "gang time" compensation policy, as outlined in the CBA, violates the IWPCA. Thus, the dispositive inquiry becomes that under the second step of the analysis, i.e., whether plaintiffs' IWPCA claim requires either the interpretation or construction of the CBA, or merely reference to the CBA.

In support of its preemption argument, defendant notes that the CBA at issue contains detailed provisions regarding "work" and pay. Specifically, defendant cites Article 20 of the CBA, entitled "HOURS OF WORK" which provides, in pertinent part:

> **Section 3:** Time and one half(1-1/2) will be paid for all hours worked in excess of forty (40) in any one week. Work time will be computed from the time employees on a position commence their work until the time worked is stopped at a position, and will be computed to the nearest minute.

Article 20 also contains addresses other issues relating to "HOURS WORKED" such as when the workweek commences for payroll purposes (Section 1), call-back pay (Section 4), holiday pay (Section 5), Sunday pay (Sections 6 and 7), and premium pay (Sections 9 and 10). The CBA also contains provisions addressing, more specifically, "HOLIDAY PAY" (Article 22), "WAGE RATES" (Article 28), and an appendix which specifies wage rates based on job positions in various departments of the facility .

But for the definition of "HOURS WORKED" as set forth in Article 20, the court finds that the other provisions cited by defendants only become relevant in the event damages must be computed. Reference to the CBA for this limited purposes does not support preemption. Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) (holding there was no preemption under section 301 since the wage rate provision in the CBA only had to be referenced to calculate damages). See also Trustees, 450 F.3d at 330 ("An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication.").

Further, the court would not properly consult the CBA in order to resolve the plaintiffs' IWPCA claim. Rather, the court would compare the facts as developed with the requirements of the IWPCA to determine whether the IWPCA had been violated. Such a claim is not preempted by section 301. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 266 (1994) (holding that strictly factual questions about an employer's conduct do not require interpretation of a term of a CBA). Section 301 does not grant parties to a CBA license to contract for what is illegal under state law. Lueck, 471 U.S. at 211-12.

In conclusion, plaintiffs' IWPCA claim is based on Iowa law and the defendant's conduct. It is not based on the CBA. Plaintiffs' IWPCA claim does not depend upon an interpretation or construction of the CBA. Thus, plaintiffs' IWPCA claim is not preempted.

Upon the foregoing,

**IT IS ORDERED** that the defendant's motion for partial summary judgment [dkt. 98] is denied.

**DATED** this 1st day of March, 2010.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA